UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**DANIEL ANTHONY PEACE**,

                Plaintiff,

v.                                **Case No. 14-cv-1416-pp**

**WARDEN PAUL KEMPER, LISA AVILA,
CAPTAIN DIEBOLD, K. ENGEL,
CO JONES, CO II LAMKE,
LT. ZIEM, CO II JOHN DOE 1, and
CO II JOHN DOE 2,**

                Defendants.

---

**DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS (DKT. NO. 8), DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR THE APPOINTMENT OF COUNSEL (DKT. NO. 3), GRANTING PLAINTIFF'S MOTION TO AMEND/CORRECT COMPLAINT (DKT. NO. 9), DENYING AS MOOT PLAINTIFF'S MOTION FOR USE OF PRISON RELEASE ACCOUNT TO PAY PARTIAL FILING FEE (DKT. NO. 16), DENYING PLAINTIFF'S MOTION IN LIMINE (DKT. NO. 23), AND SCREENING PLAINTIFF'S AMENDED COMPLAINT**

---

       The plaintiff, a state prisoner, filed a *pro se* complaint under 42 U.S.C. §1983, alleging that the defendants violated his civil rights while he was incarcerated at the Sturtevant Transitional Facility. This order resolves the plaintiff's motion for leave to proceed *in forma pauperis*, the plaintiff's motion for appointment of counsel, the plaintiff's motion to amend/correct the complaint, the plaintiff's motion for use of his prison release account to pay the initial partial filing fee, and the plaintiff's motion in limine, and as well as screening of the plaintiff's amended complaint.

1

## I. MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS (DKT. NO. 8)

The Prison Litigation Reform Act applies to this case because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. That law allows a court to give an incarcerated plaintiff the ability to proceed with his lawsuit without pre-paying the civil case-filing fee, as long as he meets certain conditions. One of those conditions is a requirement that the plaintiff pay an initial partial filing fee. 28 U.S.C. §1915(b). Once the plaintiff pays the initial partial filing fee, the court may allow the plaintiff to pay the balance of the $350 filing fee over time, through deductions from his prisoner account. *Id.*

On March 3, 2015, the court issued an order requiring the plaintiff to pay an initial partial filing fee of $7.79. Dkt. No. 15. The plaintiff filed a motion asking to use his prison release account to pay the partial filing fee, but the court received the initial partial filing fee before it resolved that motion. The court will deny the plaintiff's motion to use his prison release account to pay the initial partial filing fee as moot. Dkt. No. 16. The court will grant the plaintiff's motion for leave to proceed *in forma pauperis*, Dkt. No. 8), and will allow the plaintiff to pay the balance of the $350.00 filing fee over time from his prisoner account, as described at the end of this order.

## II. MOTION FOR LEAVE TO AMEND COMPLAINT (DKT. NO. 9)

On November 20, 2014, the plaintiff filed a motion to amend/correct complaint. Dkt. No. 9. He supported his motion with an affidavit and attached a proposed amended complaint and a number of exhibits.

In his motion, the plaintiff asserts that he has identified a defendant who was originally sued as a John Doe and also that he would like to add a request for punitive damages. This motion complies with Civil Local Rule 15, and "the court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The court will grant the motion, and will screen plaintiff's amended complaint.

### III. SCREENING OF PLAINTIFF'S AMENDED COMPLAINT (DKT. NO. 9-1)

#### A. Standard for Screening Complaints

The law requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss part or all of a complaint if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

A claim is legally frivolous when "it lacks an arguable basis either in law or in fact." Denton v. Hernandez, 504 U.S. 25, 31 (1992); Neitzke v. Williams, 490 U.S. 319, 325 (1989); Hutchinson ex rel. Baker v. Spink, 126 F.3d 895, 900 (7th Cir. 1997). The court may, therefore, dismiss a claim as frivolous where it is "based on an indisputably meritless legal theory" or where the "factual contentions are clearly baseless." Neitzke, 490 U.S. at 327. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." Lindell v. McCallum, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (citations omitted).

3

To state a claim under the federal notice pleading system, the plaintiff must provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). A plaintiff does not need to plead specific facts, and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Id. (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted).

In considering whether a complaint states a claim, courts follow the principles set forth in Twombly. First, they must "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. A plaintiff must support legal conclusions with factual allegations. Id. Second, if there are well-pleaded factual

4

allegations, courts must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that the defendants: 1) deprived of a right secured by the Constitution or laws of the United States; and 2) acted under color of state law. Buchanan-Moore v. Cnty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of North Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's *pro se* allegations, "however inartfully pleaded," a liberal construction. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

B.    Facts Alleged in the Amended Complaint

On March 27, 2014, while the plaintiff was on temporary lock up (TLU) status at Sturtevant Transitional Facility (STF), another inmate was moved into the plaintiff's cell. Dkt No. 9-1 at 4. The next night, the plaintiff was asleep on his stomach. Id. He was awakened by his cell mate pulling down his pants and trying to put his penis in the plaintiff's anus. Id. Later that night, the plaintiff got the attention of correctional officers by faking an asthma attack. Id. The plaintiff reported to Lt. Jones that he had been raped. Id.

Early in the morning on March 29, 2014, two sergeants escorted the plaintiff to Wheaton Franciscan Healthcare, where a rape kit was taken and the plaintiff was interviewed by the Racine County Sheriff's Department. Id.

5

A few days later, an inmate unit worker told the plaintiff that a first shift correctional officer II (John Doe 1) said the plaintiff had been raped, but it wasn't really rape because the other guy said the plaintiff wanted him to do it. Id. A day after that, someone put a poem about liking to have sex with men under the plaintiff's door. Id. Over the next few weeks, other detainees looked at the plaintiff's cell, pointed, and called the plaintiff gay. Id.

Three weeks after the rape, the plaintiff explained to Security Director Lisa Avila and PREA investigator Diebold how he had been sexually assaulted. Id. When the plaintiff was done telling his story, Avila had the plaintiff moved to another cell. Id. at 4-5.

Two inmates who came from another housing unit told the plaintiff he was being talked about. Id. at 5. One inmate who came to do repairs said that CO II John Doe 2 stood in front of the officers' station telling inmates that the plaintiff had been raped. Id. The second inmate, who is friends with an inmate that worked in the RCI garage with defendant CO II Lamke, told the plaintiff that everyone was saying he had been raped. Id.

Two to three weeks later, Avila and Diebold questioned the plaintiff about the sexual assault. Id. Avila also asked the plaintiff what he was in prison for, why he was sent back to prison, and about his pending charges. Id. The plaintiff answered all these questions, but Avila said she did not believe the plaintiff. Id. Diebold was also part of this conversation, and said, "they did say there was anal intercourse. We got that." Id. The plaintiff told Diebold that

6

Case 2:14-cv-01416-PP   Filed 09/15/15   Page 6 of 18   Document 25

Psychological Services said it was the plaintiff's decision whether to press charges. Id. at 5-6. The plaintiff did not want to press charges because he felt sorry for the other inmate's kid. Id. at 6.

On April 29, 2014, defendant K. Engel came to the plaintiff's door to give the plaintiff a conduct report. Id. Defendant Jones was standing with Engel at the plaintiff's door, and Jones asked Engel if she could read the conduct report. Id. As Jones started to read the conduct report, she asked Engel if this was a "major." Id. Engel said yes. Id. The conduct report was for a violation of Wis. Admin. Code DOC §303.15, sexual conduct. Id. The plaintiff asked if he could read the conduct report, but Engel said no. Id.

Engel said, "if you take it the long way, you would sit in front of a group of people, and you can bring witnesses and evidence. If you take it the short way, you would sit in front of a captain and you would be able to bring witnesses and evidence." Id. The plaintiff told her he wanted to take it the short way. Id. Engel told the plaintiff to sign the top of the form, and Engel had him check three boxes. Id. The plaintiff asked about checking a box regarding whether he was guilty or not guilty, and Engel told the plaintiff not to worry about that until the hearing. Id. Then Engel and Jones left. Id.

On April 30, 2014, Jones gave the plaintiff a copy of the conduct report. Id. She said, "you forgot to sign the bottom of this form." Id. After the plaintiff signed the due process form, Jones walked away from the plaintiff's door. Id. She came back seven minutes later and asked the plaintiff if he wanted to call

7

any witnesses. Id. at 6-7. The plaintiff said, "Who am I going to call as a witness," and she left again. Id. at 7.

About a week later, the plaintiff had a conduct report hearing with Lt. Ziem. Id. The plaintiff explained what happened to him, and Lt. Ziem had a correctional officer take the plaintiff back to his cell until count time was over. Id. As the plaintiff was in intake, waiting to go to Racine Correctional Institution ("RCI"), Lt. Ziem came with the paperwork from the hearing. Id. The plaintiff asked Lt. Ziem if she had found him guilty. Id. She said that he had a chance for a due process hearing, but he waived it. The plaintiff tried to explain, but Lt. Ziem said, "that doesn't matter. Put it down on your appeal. You're going to RCI anyway." Id.

The plaintiff was at recreation in segregation at RCI, and another inmate told the plaintiff that he heard he had been raped by someone who worked in the garage. Id.

The plaintiff filed an appeal form to Warden Paul Kemper on May 5, 2014. Id. The warden affirmed the hearing officer's decision on July 13, 2014, without investigating the claims in the plaintiff's appeal. Id.

When the plaintiff was transferred to Waupun Correctional Institution, he was not able to obtain employment due to his poor conduct report history because of this major conduct report. Id.

The plaintiff alleges that he was humiliated by staff telling other inmates about the plaintiff being sexually assaulted. Id. at 8. He also suggests that staff members retaliated against the plaintiff by writing a conduct report falsely

8

alleging sexual conduct, then found the plaintiff guilty, and did not investigate the plaintiff's appeal. Id.

The plaintiff seeks compensatory and punitive damages, as well as injunctive relief. Id. at 9-11. The plaintiff also included in his complaint a request for a no-contact order with any of the defendants, but he did not file a separate motion for a preliminary injunction. Id. at 11.

C.     Legal Analysis of Alleged Facts

The plaintiff indicates that "[a]t the time [his] Civil Rights were violated, the defendants also violated my 8th amendment right for free of mental anguish, physical or emotional wanton infliction of pain, or emotional distress." Id. at 8. It appears, then, that the plaintiff is asserting a violation of his Eighth Amendment protections against cruel and unusual punishment.

To the extent the plaintiff considers the officers telling others about his rape to be harassment, "[s]tanding alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws." DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir. 2000)("The use of derogatory language, while unprofessional and deplorable, does not violate the Constitution.").

Similarly, the plaintiff has made no allegations regarding threats to the plaintiff's safety, nor has he presented any facts that would give rise to a failure to protect claim. See Dale v. Poston, 548 F.3d 563, 569 (7th Cir. 2008) ("Once prison officials know about a serious risk of harm, they have an obligation to

9

take reasonable measure to abate it.") (internal quotation and citation omitted). The plaintiff does not suggest that anyone knew about the risk of the sexual assault before it occurred.

The plaintiff complains about some of the defendants telling other prison employees and inmates that the plaintiff was raped. At best, prisoners have "very limited privacy rights." Franklin v. McCaughtry, 110 Fed.Appx. 715, 719 (7th Cir. 2004) (citing Anderson v. Romero, 72 F.3d 518, 522 (7th Cir. 1995)). The Supreme Court has recognized a constitutional right to information privacy. Whalen v. Roe, 429 U.S. 589, 599-600 (1977). It remains an open question whether prisoners "enjoy a constitutional right to privacy in their medical information." Franklin, 110 Fed.Appx. at 719 (citations omitted). In Franklin, the court cited Carroll v. DeTella, 255 F.3d 470, 472 (7th Cir. 2001), for the principle that "[p]risoners cannot enjoy greater privacy protection than individuals in free society." Franklin, 110 Fed.Appx. at 719. The court likened the plaintiff's concern about being forced to discuss his medical information (regarding a cancerous finger sore, diabetes, and the need for eyeglasses) in the presence of other inmates and prison staff members to a "general indiscretion," and noted that "the interest in the privacy of medical information will vary with the condition." Id. (citing Powell v. Schriver, 175 F.3d 107, 111 (2d Cir. 1999)). The court concluded that the plaintiff's being forced to discuss "pedestrian maladies" did not "transgress the constitutional right to privacy insofar as that right might extend to prisoners" and affirmed the district court's dismissal of the claim. Franklin, 110 Fed.Appx. at 719.

The plaintiff's alleged sexual assault was not necessarily a medical condition, but he was taken to the hospital for examination and the administration of a rape kit. Additionally, unlike the pedestrian maladies referenced in Franklin, sexual assault is a very sensitive topic. Although prisoners are not entitled to the protections of the Fourth Amendment, they are not "without a remedy for calculated harassment unrelated to prison needs." Hudson v. Palmer, 468 U.S. 517, 530 (1084). At this early stage, the court will allow the plaintiff to proceed on his claims under the Eighth and Fourteenth Amendments regarding the dissemination of information about the plaintiff's alleged sexual assault. There was no prison need for that information to be shared openly with staff and other inmates.

This claim may proceed against defendants CO II John Doe 1, CO II John Doe 2, CO II Lamke, CO II K. Engel, CO II Jones, Lt. Ziem, Security Director Lisa Avila, and PREA investigator Diebold. These are the defendants who had knowledge of the sexual assault prior to the plaintiff's transfer to RCI. There is no allegation that Warden Paul Kemper had the information at that time or participated in spreading the information to officers and inmates, and thus the court will not allow the plaintiff to proceed on his Eighth and Fourteenth Amendment claims against defendant Kemper.

The plaintiff's allegations also are enough to state a First Amendment retaliation claim against those defendants involved in issuing his conduct report. To state a retaliation claim, the plaintiff must allege that "(1) he engaged

11

in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the [d]efendants' decision to take the retaliatory action." Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009) (internal quotations omitted).

The plaintiff's report of his rape constitutes protected First Amendment activity. According to the plaintiff, the defendants filed a conduct report against him in retaliation for making those rape allegations. The court can infer at this stage, for the purpose of stating a claim, that the plaintiff's report of the rape was at least a motivating factor in the conduct report that was brought against him. Each defendant who reviewed that conduct report, and reviewed or ruled on any appeal or grievance from the report, is subject to the plaintiff's retaliation claim. At this time, the court will allow the plaintiff to proceed on his First Amendment retaliation claim against all of the named defendants (identified and unidentified).

In some cases, if a judgment in the plaintiff's favor would effectively overturn the prison disciplinary board's finding, the plaintiff may not proceed on such a claim. See Edwards v. Balisok, 520 U.S. 641 (1997); Heck v. Humphrey, 512 U.S. 477 (1994). These decisions may foreclose a civil rights suit if a judgment in favor of the inmate necessarily would imply that he was wrongly disciplined with a loss of good-time credits. See Dixon v. Tolley, 502 Fed.Appx. 605, 606 (7th Cir. 2013) (citing Edwards, 520 U.S. at 647-48. "[B]ut

12

the bar imposed by Edwards and Heck does not apply to an inmate who was punished only with segregation." Dixon, 502 Fed.Appx. at 606 (citing Muhammad v. Close, 540 U.S. 749, 751 (2004); Simpson v. Nickel, 450 F.3d 303, 307 (7th Cir. 2006)).

> Because Heck and Edwards concern the allocation between collateral review and damages actions as a matter of federal law, they have no application where collateral review is unavailable – either because the plaintiff's custody has expired or because he was never "in custody" as a result of the defendants' contested actions. See Muhammad v. Close, 540 U.S. 749, 754-55 (2004); DeWalt v. Carter, 224 F.3d 607 (7th Cir. 2000). Neither disciplinary segregation nor a reduction in the amount of recreation is a form of "custody" under federal law; Heck and Edwards thus are beside the point.

Simpson v. Nickel, 450 F.3d 303, 307 (7th Cir. 2006). The plaintiff has not alleged that his time in segregation affected his good time credits. As a result, his claims are not barred by Heck or Edwards.

As a final note, the court recognized that the plaintiff is proceeding on claims against CO II John Doe 1 and CO II John Doe 2. Once the defendants have filed an answer to the complaint, the court will issue a scheduling order setting deadlines for the identification of the Doe defendants, as well as for the completion of discovery and filing dispositive motions. The plaintiff will need to use the discovery process to discover the identities of the Doe defendants. He should then ask the court to substitute those individuals for the parties currently identified CO II John Doe 1 and CO II John Doe 2.

13

## IV. PLAINTIFF'S MOTION FOR THE APPOINTMENT OF COUNSEL (DKT. NO. 3)

In a civil case, the court has discretion to decide whether to recruit a lawyer for someone who cannot afford one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C § 1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). First, however, the person has to make a reasonable effort to hire private counsel on his own. Pruitt v. Mote, 503 F.3d 647, 653 (7th Cir. 2007). After the plaintiff makes that reasonable attempt to hire counsel, the court then must decide "whether the difficulty of the case – factually and legally – exceeds the particular plaintiff's capacity as a layperson to coherently present it." Navejar, 718 F.3d at 696 (citing Pruitt, 503 F.3d at 655). To decide that, the court looks, not only at the plaintiff's ability to try his case, but also at his ability to perform other "tasks that normally attend litigation," such as "evidence gathering" and "preparing and responding to motions." Id.

In his November 10, 2014 motion, the plaintiff did not include any information about his attempts to hire a lawyer on his own. Dkt. No. 3. On July 29, 2015, however, the court received a declaration in support of the plaintiff's motion to appoint counsel. Dkt. No. 22. In that declaration, the plaintiff documented his attempts to secure counsel on his own. The court concludes that this declaration satisfies the first Pruitt factors, leaving the court to decide whether, given the difficulty of the case, the plaintiff is competent to represent himself.

14

The plaintiff very clearly and competently has presented his claims to the court. His claims are fact-based, and relate to what he and the defendants said and did, not to some complex legal argument. At this stage, the court concludes that the plaintiff's case is not so complicated that he can't adequately represent himself.  See Navejar, 718 F.3d at 696 (citing Pruitt, 503 F.3d at 655).

## V. PLAINTIFF'S MOTION IN LIMINE (DKT. NO. 23)

The plaintiff filed a motion in limine on July 29, 2015. Dkt. No. 23. The motion asks the court to suppress allegations of sexual misconduct after May 5, 2014. It is unclear exactly what allegations of sexual misconduct the plaintiff references. In any event, it is too early for the court to make decisions about what evidence it might or might not admit at any future trial. After the court enters this order, and after the defendants have been served with and responded to the complaint, the parties will embark on discovery, which means that each side will turn over to the other side any information relevant to the allegations in the complaint. After that, the parties may, if they wish, file motions for summary judgment, where the court will decide whether the evidence shows that there are any material facts in dispute. Only if the court does not grant summary judgment in favor of the defendants will the court schedule a trial, and only then will the court begin to determine what evidence may or may not be admissible at that trial. The court will deny this motion.

## VI. CONCLUSION

The court **GRANTS** the plaintiff's motion for leave to proceed *in forma pauperis* (Dkt. No. 8). The court **ORDERS** the Secretary of the Wisconsin Department of Corrections or his designee to collect from the plaintiff's prison trust account the $342.21 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The Secretary shall clearly identify the payments by the case name and number.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to appoint counsel (Dkt. No. 3). The court **GRANTS** the plaintiff's motion to amend/correct complaint (Dkt. No. 9); the clerk of court shall docket the proposed amended complaint (Dkt. No. 9-1) and its exhibits as the amended complaint and exhibits. The court **DENIES AS MOOT** the plaintiff's motion for use of his prison release account to pay his initial partial filing fee (Dkt. No. 16). The court **DENIES** the plaintiff's motion in limine (Dkt. No. 23).

The court **ORDERS** that the plaintiff may proceed on Eighth and Fourteenth Amendment privacy claims and First Amendment retaliation claims against the defendants, as provided above.

The court **ORDERS** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this court, copies of plaintiff's amended complaint and this order are being electronically sent today

16

to the Wisconsin Department of Justice for service on the following state defendants: Warden Paul Kemper, Security Director Lisa Avila, PREA Diebold, CO II K. Engel, CO II Jones, CO II Lamke, and Lt. Ziem.

The court further **ORDERS** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this court, the defendants who are served with the amended complaint shall file a responsive pleading to the complaint within sixty days of receiving electronic notice of this order.

The court **ORDERS** that the plaintiff shall submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter. As each filing will be electronically scanned and entered on the docket upon receipt by the clerk, the plaintiff need not mail copies to the defendants. All defendants will be served electronically through the court's electronic case filing system. The plaintiff should also retain a personal copy of each document filed with the court.

The court further advises plaintiff that if he does not timely file documents, the court may dismiss his case for failure to prosecute.

In addition, the parties must notify the clerk of court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

The court will send copies of this order to the warden of the institution where the inmate is confined.

Dated at Milwaukee this 15th day of September, 2015.

BY THE COURT:

HON. PAMELA PEPPER
United States District Judge