UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**DANIEL ANTHONY PEACE**,

                Plaintiff,

v.                                 **Case No. 14-cv-1416-pp**

**WARDEN PAUL KEMPER, LISA AVILA,
ROBIN DIEBOLD, KIMBERLY ENGEL,
CO JONES, CO II LAMKE,
TERRY ZIEM, CO JOHN DOE 1, and
CO JOHN DOE 2,**

                Defendants.

---

**DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S RETALIATION CLAIM (DKT. NO. 31), GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON EXHAUSTION GROUNDS (DKT. NO. 34), DENYING DEFENDANTS' MOTION IN LIMINE (DKT. NO. 50), DENYING DEFENDANTS' MOTION TO STAY BRIEFING ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (DKT. NO. 56), DENYING PLAINTIFF'S MOTION TO STRIKE DEFENDANTS' MOTINO FOR PARTIAL SUMMARY JUDGMENT (DKT. NO. 60), DENYING PLAINTIFF'S REMAINING MOTIONS (DKT. NOS. 51, 52, 57), AND DISMISSING CASE**

---

The plaintiff, Daniel Anthony Peace, is proceeding on (1) Eighth and Fourteenth Amendment claims that staff spread information about a sexual assault the plaintiff reported, and (2) a First Amendment retaliation claim that he received a conduct report in retaliation for reporting a sexual assault. Dkt. No. 25.

On November 13, 2015, the defendants filed a motion to dismiss the plaintiff's retaliation claim (Dkt. No. 31), and a motion for partial summary judgment on exhaustion grounds on the plaintiff's other claims, Dkt. No. 34.

1

On February 10, 2016, the court stayed discovery on the merits until after it could decide the motion to dismiss and motion for partial summary judgment. Dkt. No. 46.

Since the court stayed discovery on February 10, 2016, the plaintiff has filed: a motion to appoint officer of the court (Dkt. No. 51), a motion for partial summary judgment on his retaliation claim (Dkt. No. 52), a motion for order allowing use of his release account for copies and legal supplies (Dkt. No. 57), and a motion to strike the defendant's motion for partial summary judgment on exhaustion grounds (Dkt. No. 60). The defendants have filed: a motion *in limine* (Dkt. No. 50) and a motion to stay briefing on the plaintiff's motion for partial summary judgment, Dkt. No. 56.

The court will deny the plaintiff's motion to strike the defendant's motion for partial summary judgment on exhaustion grounds, because it is an improper attempt to supplement the plaintiff's response to the defendants' motion more than two months after his original response. Dkt. No. 60. The court will deny the other post-February 10, 2016 motions, based on the fact that it is granting both the defendants' motion to dismiss the retaliation claim and their partial summary judgment motion.

I.  **Motion to Dismiss Retaliation Claim**

The defendants ask the court to dismiss the plaintiff's retaliation claim. Dkt. No. 31. They submit that it is not plausible to infer that the plaintiff received a conduct report in retaliation for reporting a sexual assault. Instead, based on the conduct report itself, which the plaintiff attached to his amended

2

complaint, the defendants argue that the only plausible bases for the conduct report were (1) the plaintiff being less than truthful during the sexual assault investigation and (2) the plaintiff engaging in sexual acts.

   A.   Motion to Dismiss Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). When evaluating a motion to dismiss under Rule 12(b)(6), the court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences from those facts in the plaintiff's favor. AnchorBank, FSB v. Hofer, 649 F.3d 610, 614 (7th Cir. 2011). To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009). In this context, "plausible," as opposed to "merely conceivable or speculative," means that the plaintiff must include "enough details about the subject-matter of the case to present a story that holds together." Carlson v. CSX Transp., Inc., 758 F.3d 819, 826-27 (7th Cir. 2014) (quoting Swanson v. Citibank, N.A., 614 F.3d 400, 404–05 (7th Cir. 2010)). "[T]he proper question to ask is still could these things have happened, not did they happen." Id. at 827 (internal quotation and citation omitted). The plaintiffs "need not 'show'

3

anything to survive a motion under Rule 12(b)(6)—[they] need only allege." Brown v. Budz, 398 F.3d 904, 914 (7th Cir. 2005).

In their motion to dismiss, the defendants may rely only on the pleadings, but exhibits are part of a complaint. See Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Plaintiffs may oppose a motion to dismiss with "materials outside the pleadings to illustrate the facts the party expects to be able to prove." Geinosky v. City of Chicago, 675 F.3d 743, 745 n.1 (7th Cir. 2012) (citing Early v. Bankers Life and Cas. Co., 959 F.2d 75, 79 (7th Cir. 1992) for the proposition that a "plaintiff is free to assert new facts in [a] brief opposing [a] motion to dismiss").

B. Legal Analysis

The defendants argue that the plaintiff's complaint failed to state a First Amendment retaliation claim because retaliation is not a plausible reason for the conduct report the plaintiff received. Rather, the conduct report attached to the amended complaint sets forth the reasons it was issued: the writer determined the plaintiff was "less than truthful" and had engaged in sexual acts, which violates the Wisconsin Administrative Code. Additionally, the defendants submit that if the plaintiff's report of sexual assault was false, it was not protected by the First Amendment.

To state a retaliation claim, the plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First

4

Amendment activity was at least a motivating factor in the [d]efendants' decision to take the retaliatory action." Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009) (internal quotations omitted).

Originally, the plaintiff alleged that the defendants filed the conduct report against him in retaliation, not just for his reporting an assault, but also due to his criminal history, pending charges and the reasons he was re-incarcerated. The court, however, considered only whether the report of sexual assault resulted in retaliation, Dkt. No. 25 at 12, because the other reasons the plaintiff asserted do not constitute protected First Amendment activity.

Based on a liberal construction of the amended complaint, the court allowed the plaintiff to proceed on the retaliation claim in that limited fashion. The defendants now argue that retaliation is not a plausible reason for the conduct report, because the conduct report itself contains the reasons it was issued. Conduct Report 2288755, attached to the plaintiff's amended complaint, states:

> During the course of a PREA investigation inmate Peace, Daniel #508684 alleged that he was woken by his cellmate Bain, Kyle #585894 pulling down Peace's pants and attempted to anally penetrate him. Bain states Peace and he had discussed sexual activity including oral sex. It was reported Peace asked Bain to monitor when staff completed rounds. As soon as the security staff completed their observation round, Peace performed oral sex on Bain. Bain states Peace pulled Bain's pants down and gave Bain oral sex – then Bain performed anal sex on Peace. During the course of the investigation it was apparent both inmates were less than truthful. However both inmates admit that the anal intercourse occurred with Bain penetrating Peace. Throughout the interview Bain stated that the sex was consensual and included Bain receiving oral sex from Peace. Inmate Peace denies oral sex occurred but states he was

5

> forced to comply with the anal sex. Per the POC-41 WI DOC Sexual Abuse/Assault prevention and intervention an overview for offenders provided to every inmate under the supervision of WI DOC Offender on Offender Sexual Conduct is any type of consensual activity between offenders as described by DOC 303.15. Sexual acts between offenders, even when no obligations are raised are prohibited acts. Both parties engaged in sexual conduct may be found guilty of an offense and receive disciplinary sanction. WI DOC has a zero-tolerance for this activity and offenders must be held accountable for their actions. This activity erodes the authority of WI DOC to adequately manage the population to ensure its safety, security, and integrity. Both inmates Bain and Peace engaged in sexual acts.

Dkt. No. 26, Exhibit 2.

In response to the defendants' motion, the plaintiff relies primarily on his own allegations regarding retaliation, which he made in his amended complaint. While the amended complaint itself included just enough to state a plausible retaliation claim, that is not the case when one reads the complaint alongside the conduct report itself. It would be "speculative" to suggest another reason for the conduct report (retaliation) where the conduct report itself shows that the PREA investigators did not believe the plaintiff and determined that he and his cellmate engaged in consensual sexual activity, which is not allowed in prison. See Carlson, 758 F.3d at 826-27. The court will grant the defendants' motion to dismiss the plaintiff's retaliation claim and dismiss that claim with prejudice.

## II. Motion for Summary Judgment on Exhaustion Grounds

The defendants argue that they are entitled to partial summary judgment on the plaintiff's Eighth and Fourteenth Amendment claims (the other two claims on which the court allowed the plaintiff to proceed at the screening

6

stage) that the defendants shared information about the plaintiff being sexually assaulted with other inmates and staff members.

  A.  Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." Anderson, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be disputed or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

7

B.  Facts

The facts are primarily taken from "Defendants' Proposed Findings of Fact" (Dkt. No. 36), the Declaration of Daniel Anthony Peace (Dkt. No. 41), and Chapter 310 of the Wisconsin Administrative Code.

The Wisconsin Department of Corrections (DOC) maintains an Inmate Complaint Review System ("ICRS") in Wisconsin adult correctional institutions to afford inmates a process by which grievances may be expeditiously raised, investigated, and decided. Dkt. No. 36, ¶2; Wis. Admin. Code § DOC 310.01(2)(a). An inmate begins the ICRS process by filing a complaint with the institution complaint examiner ("ICE") at his institution. Dkt. No. 36, ¶3. The complaint must be filed within fourteen calendar days of an alleged incident and must "clearly identify the issue." Dkt. No. 36, ¶4; Wis. Admin. Code § DOC 310.09(1)(e) and (6). The ICE reviews and investigates the inmate complaint at the institution level, and makes a recommendation on the complaint to the appropriate reviewing authority, who renders a decision. Dkt. No. 36, ¶5; Wis. Admin. Code § DOC 310.11. In order for an inmate to exhaust his administrative remedy, he must complete the complaint process at the institution level as well as the appeal process with the Corrections Complaint Examiner's office, which results in a decision by the Officer of the Secretary. Dkt. No. 36, ¶8.

The plaintiff filed his only relevant complaint on July 21, 2014, and it received the number WCI-2014-14249. Dkt. No. 36, ¶12. The complaint stated:

> I was told by ticket hearing officer Lt. Ziem to appeal ticket #2288755. Due to rookie officer C.O. II K. Engel serving me

> the ticket, and giving me the wrong advise on due process. She told me I could get due process going the short way.
>
> I appeal ticket #2288755 on this fact. I was deined [sic] my appeal, without the fact of what I was appealing being address.
>
> When the appeal was sent back to me it said officer/hearing officer made the right decision.
>
> I was given a rape test at the hospital that prove, I never gave and oral sex to anyone. It also had DNA to prove I was rape.
>
> There was cotton swabs, tooken [sic] from, my mouth, finger nails, anus, and private areas.
>
> The cotton swabs from my mouth prove I never gave any oral sex.

Id. at ¶13; Dkt. No. 37-2 at 14 [sic].

On August 18, 2014, the ICE recommended the offender complaint be dismissed on the grounds that she found no procedural error that occurred in the disciplinary process in conjunction with CR #2288755. Dkt. No. 36, ¶14. Warden Kemper, as the reviewing authority, affirmed the ICE's recommendation and dismissed the offender complaint on September 5, 2014. Id. at ¶15. The plaintiff appealed the dismissal to the Corrections Complaint Examiner's Office. Id. at ¶16. In his appeal of the offender complaint, the plaintiff wrote, in part, "The next day CO Jones came back to my cell told me I had to sign the same paper. She gave me a copy of the ticket." Dkt. No. 41-1 at 15. The plaintiff's appeal did not complain that he had been retaliated against for reporting that he had been raped. Dkt. No. 36, ¶17. The plaintiff filed no further offender complaints relevant to this lawsuit. Id. at ¶18.

9

Some complaints are rejected at the institution level, for reasons specified in Wis. Admin. Code § DOC 310.11(5). Dkt. No. 36, ¶6. However, there are no letters from the ICE's office or the CCE's office returning any rejected offender complaints to the plaintiff that are related to this lawsuit. Dkt. No. 36, ¶18.

C. Legal Analysis

Under the Prison Litigation Reform Act (PLRA), "[n]o action shall be brought with respect to prison conditions under Section 1983 of this title or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(e). The PLRA exhaustion requirement requires "proper exhaustion," meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules. Woodford v. Ngo, 548 U.S. 81, 87, 92 (2006); Pozo v. McCaughtry, 286 F.3d 1022, 1023 (7th Cir. 2002). It is the defendants' burden to establish that the plaintiff has failed to exhaust administrative remedies. Walker v. Thompson, 288 F.3d 1005, 1009 (7th Cir. 2002).

The undisputed facts show that plaintiff failed to exhaust his administrative remedies with regard to this claim. The ICRS was the administrative remedy available to the plaintiff, and his only offender complaint regarding this incident failed to include allegations that staff impermissibly shared information regarding his sexual assault with other inmates and staff members.

10

The plaintiff contends that he exhausted his administrative remedies in other ways, by telling Avila and Diebold as part of the PREA investigation that staff members told other inmates and staff members about his sexual assault and that he was being harassed as a result. The plaintiff's statements during the PREA investigated do not constitute proper exhaustion.

"Unless the prisoner completes the administrative process by following the rules the state has established for that process, exhaustion has not occurred." Pozo, 286 F.3d at 1023. "Any other approach would allow a prisoner to 'exhaust' state remedies by spurning them, which would defeat the statutory objective of requiring the prisoner to give the prison administration an opportunity to fix the problem – or to reduce the damages and perhaps to shed light on factual disputes that may arise in litigation even if the prison's solution does not fully satisfy the prisoner." Id. at 1023-24 (citations omitted). "To exhaust administrative remedies, a person must follow the rules governing filing and prosecution of a claim." Id. at 1025.

The plaintiff also argues that the offender complaint he filed put the defendants on notice of his claim regarding shared information. He suggests that it is implicit in the offender complaint that Engel told another officer about the sexual assault, because Jones returned the next day to have the plaintiff sign the due process form. That is not enough, particularly because the constitutional claim relates to the unnecessary or gratuitous dissemination of information about the sexual assault. Moreover, the plaintiff's offender complaint focused exclusively on the problems with the plaintiff's waiver of due

11

process, his conduct report hearing, and his appeal from the conduct report decision. There is nothing in the plaintiff's offender complaint or his appeal regarding sharing information regarding the plaintiff being sexually assaulted with other inmates or unnecessarily with other staff.

Additionally, the court notes that it appears that the plaintiff failed to exhaust his administrative remedies with regard to his retaliation claim. The same facts apply to that claim, and the plaintiff's lone offender complaint did not mention retaliation. Even if the court had denied the defendants' motion to dismiss the plaintiff's retaliation claim, the court would have found the plaintiff failed to exhaust his administrative remedies with regard to that claim and dismissed it without prejudice.

### III. OTHER MOTIONS

Because the court's resolution of the defendants' motion to dismiss and the defendants' motion for summary judgment results in the dismissal of all three of the plaintiff's claims, the court does not need to decide the remaining motions, and will deny them.

### IV. CONCLUSION

The court **GRANTS** the defendants' motion to dismiss plaintiff's retaliation claim. Dkt. No. 31. That claim is **DISMISSED WITH PREJUDICE**.

The court **GRANTS** the defendants' motion for partial summary judgment on exhaustion grounds. Dkt. No. 34. The plaintiff's Eighth and Fourteenth Amendment claims are **DISMISSED WITHOUT PREJUDICE**

The Clerk of Court will enter judgment accordingly.

The court **DENIES** the parties' other pending motions. Dkt. Nos. 50, 51, 52, 56, 57, 60.

Dated in Milwaukee, Wisconsin this 30th day of September, 2016.

BY THE COURT:

HON. PAMELA PEPPER
United States District Judge